## Tankin et al. v. Hotel & Restaurant Workers Industrial Union, Local No. 356, C. I. O., et al.

*Hymen Schwartz*, for plaintiffs.

*Louis F. McCabe*, for defendants.

ALESSANDRONI, J., September 8, 1939.—This bill in equity is filed to enjoin defendant union, its agents and employes, and the individual defendants as duly authorized officers of the union from unlawfully picketing the place of business of plaintiffs and any other places where

plaintiffs conduct their business of catering at social functions, and from falsely asserting that a strike is in progress in plaintiffs' business. The bill avers that plaintiffs are and have been engaged in the business of catering at social functions; that the waiters employed by them were members of defendant union; that on June 3, 1939, plaintiffs entered into a written agreement with Waiters Union, Local No. 434, affiliated with the American Federation of Labor; that thereafter defendant union picketed plaintiff's place of business with placards reading: "On Strike. Tankin's Catering Service. Refuses to sign agreement with Hotel and Restaurant Workers C. I. O. Local No. 356"; that the representations are false and incorrect in that no strike is in progress in the business of plaintiffs, and plaintiffs did not refuse to sign an agreement with defendant union; that plaintiffs, on May 31, 1939, entered into a memorandum agreement with defendant union, but that thereafter, on June 3, 1939, the union refused to continue negotiations under that agreement without any justification.

Plaintiffs filed a rule for preliminary injunction pursuant to which testimony was taken. The testimony discloses that plaintiffs were engaged in the business of catering at social functions, and for that purpose engaged waiters whenever necessary. These waiters were supplied by defendant union upon request of plaintiffs. On May 17, 1939, while plaintiffs were catering at the Sylvania Hotel in Philadelphia, defendants' representatives approached the manager of plaintiffs' business and demanded that an agreement be executed. Upon refusal the representatives immediately ordered the waiters to cease their employment. Thereafter the parties engaged in negotiation, as a result of which a permanent agreement was to be executed by 12 o'clock noon, Saturday, June 3d, pending which plaintiffs agreed to employ as waiters only members of defendant union. The negotiations were carried on in accordance with the terms of the contract until Friday, June 2d, when it appears

that the parties were unable to reach an agreement, but allowed the negotiations to remain open. No word was received from plaintiffs on the next day, which was the final day for negotiations under the terms of the agreement, until plaintiffs called the union office on the telephone, as was the custom, to engage waiters for the next day. At that time defendants informed plaintiffs that a strike had been declared by reason of the failure of plaintiffs to execute a final agreement. Plaintiffs then approached the Waiters Union affiliated with the American Federation of Labor, and, after negotiations continuing that afternoon and evening, an agreement was signed at about midnight. Since that time the latter union has been supplying waiters to plaintiffs, and some of the employes of plaintiffs have now become members of the union affiliated with the American Federation of Labor. Plaintiffs testified that defendant union has picketed their business from that date, and on one occasion resorted to acts of violence.

Defendants' testimony discloses that they attempted to execute an agreement with plaintiffs for some time, but were continually delayed by the action of plaintiffs; that the memorandum agreement placed a deadline on the negotiations for June 3d; that plaintiffs refused to execute a permanent agreement on that date. Defendants denied that any acts of violence have ever been committed, but admitted picketing as described by plaintiffs.

Plaintiffs contend that there is no strike by its employes, and that the picketing by defendant union should be enjoined.

The Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS §206A, defines "employes" as all natural persons who perform services for other persons including any individual who has ceased work as a consequence of or in connection with any matter involved in a labor dispute: sec. 3(h). The term "labor dispute" is also defined by the act in a most comprehensive manner, and includes any controversy concerning terms or conditions

of employment, or concerning the association or representation of persons in negotiating conditions of employment, or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employes are on strike with the employer: sec. 3 (c). It is apparent that the situation in the instant case is included within this definition, even though the character of plaintiffs' business requires only casual or occasional employment. It is significant that prior to June 3, 1939, all persons employed by plaintiffs were engaged by calling defendant union.

Section 6 of the Labor Anti-Injunction Act, supra, prohibits a court from issuing a restraining order, whether temporary or permanent, in any case involving a labor dispute as defined by the act which would restrain any of the acts enumerated in this section. One of those acts, described in subsection (e), relates to communicating information or giving publicity to the existence of a labor dispute by picketing, providing that the picketing does not involve misrepresentation, fraud, violence, or breach of the peace.

It is apparent that under the Act of 1937 an injunction could not be issued unless the picket signs misrepresented the existing facts. It has long been established, independent of the recent labor legislation, that a preliminary injunction will not issue when the right sought to be protected is in doubt, and it is incumbent upon the one who seeks such relief to show affirmatively not only the existence of the right, but also that the act sought to be restrained would be clearly a violation of that right: Audenreid v. The Philadelphia & Reading R. R. Co., 68 Pa. 370, 375; Kittanning Brewing Co. v. American Natural Gas Co., 224 Pa. 129, 130.

This court cannot hold as a matter of law under the circumstances of this case that the statements contained in the placards clearly misrepresented the existing facts

to the public. The term "strike" must be regarded in its broad significance attaching to a dispute of any kind between capital and labor. A strike is a combined effort of employes to obtain more desirable terms or conditions of employment by a cessation of work at a preconcerted time, and continuing thereafter until an adjustment or settlement has been effected, or until an abandonment occurs. Even though there is a resumption of operations without such adjustment, those employes who do not return to work are still entitled to the classification of striking employes. The employer without the concurrent action of his employes cannot terminate a strike in the absence of settlement or adjustment or an abandonment by the employes of their intention to adjust their difficulties. The employes did not walk out with the intention of quitting their employment, and they still claim and assert their right to return under more advantageous terms: Jeffery-De Witt Insulator Co. v. National Labor Relations Board, 91 F.(2d) 134, certiorari denied, 302 U. S. 731; Michaelson et al. v. United States ex rel., 291 Fed. 940; Iron Molders' Union, etc., et al., v. Allis-Chalmers Co., 166 Fed. 45.

It is evident that the statements on the placards are not such clear misrepresentations of existing facts as to warrant this court in granting a preliminary injunction under the circumstances.

Plaintiffs contend, however, that the Act of June 9, 1939, P. L. 302, amending the Labor Anti-Injunction Act, permits this court to issue an injunction under the circumstances, because this labor dispute is in disregard of a valid subsisting labor agreement: sec. 4(a). The purpose of this amendment is to offer a remedy where the employer and employe have entered into a labor agreement which is valid and subsisting at a time when a labor dispute in violation of its terms arises. The legislature was cognizant of the evil common in recent years occurring when unions or groups of employes stopped work in violation of contracts which they or their repre-

sentatives had executed. The agreement which this employer executed was one with an independent association of employes, and was not executed until after the labor dispute was in existence. An employer cannot terminate a labor dispute by refusing to recognize or bargain with his disputants and expect to secure the protection afforded by this act by entering into an agreement with another association of employes.

For the foregoing reasons, this court is of the opinion that plaintiffs have failed to meet the burden imposed upon them, and are not entitled to the equitable relief sought.

And now, to wit, September 8, 1939, the rule for preliminary injunction is dismissed.